

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DGR:WPC/JV

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 12, 2022

**By ECF**

The Honorable Carol Bagley Amon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Denny Martin
      Criminal Docket No. 21-67 (CBA)

Dear Judge Amon:

  The government respectfully submits this sentencing letter in advance of the sentencing hearing in the above-captioned matter, which is scheduled for September 19, 2022, at 11:45 a.m. On May 16, 2022, the defendant Denny Martin, a medical doctor and owner of a medical facility, pled guilty to health care fraud in connection with the submission of fraudulent claims to Medicare.

  According to the pre-sentence investigation report ("PSR"), the defendant's total offense level under the United States Sentencing Guidelines (the "Guidelines") is level 15 and his Criminal History Category is I, which yields a range of imprisonment of 18 to 24 months. See PSR at ¶¶ 40, 44 and 77.

  A sentence of imprisonment of between 18 and 24 months would accomplish the goals of Section 3553(a) of Title 18 of the United States Code: namely, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, general deterrence and avoid unwarranted sentencing disparities.

I. The Offense Conduct

  Martin was the sole owner of AM PM Medical, P.C. ("AM-PM") located in the Bronx, NY. PSR ¶ 13. Martin, through AM-PM, employed doctors and nurses to provide home health services to Medicare beneficiaries. See id. ¶¶ 15, 17. Martin, AM-PM and his doctor-employees were enrolled in Medicare and as such could submit claims to Medicare.

The Centers for Medicare and Medicaid ("CMS") is the federal agency under the United States Department of Health and Human Services, which is responsible for administering the Medicare program. Id. ¶ 6. Medicare Part C beneficiaries can choose to enroll in a managed care plan with a managed care organization ("MCO") or with a health maintenance organization ("HMO"). Id. ¶ 9. United Health Care is a company that contracts with CMS to administer the Medicare Part C program for the beneficiaries in its network and to adjudicate and pay the claims submitted by Medicare authorized medical providers. Id.

Among other services, Medicare Part C covered home health services. Martin, through AM-PM, submitted claims for home health visits that did not occur. See id. ¶¶ 13, 16, 18-24. Law enforcement interviews of Medicare beneficiaries purportedly treated by AM-PM medical personnel confirmed that the home health visits and associated services were not performed. See id. ¶¶ 20-24. Law enforcement interviews of medical personnel purportedly conducting home health visits also confirmed that those services were not performed. See id. ¶¶ 15-19. Nonetheless, Medicare, through UHC, deposited the reimbursement funds for the fraudulently billed services into Martin's bank account. Id. ¶ 14.

There came a time when Medicare beneficiaries called in complaints to AM-PM about being billed for home health services that had not actually occurred. See id. ¶ 26. Martin's employees received those telephonic complaints and reported them to Martin. While Martin told his employees that he would take care of the complaints, the conduct and complaints did not stop. The Medicare funds continued to be deposited into Martin's bank account.

In this way, Martin, through AM-PM, submitted false claims to Medicare and received at least $249,000 in unlawful proceeds. See id. ¶ 25.

On September 26, 2019, Martin was arrested on a complaint and charged with health care fraud in connection with claims submitted to Medicare. See Complaint at Docket Entry ("DE") #1.

On February 5, 2021, Martin was indicted for Health Care Fraud and filing False Claims. See Indictment at DE #47. On May 16, 2022, Martin pled guilty, pursuant to a written plea agreement, to Count One of the indictment charging Health Care Fraud before the Honorable Peggy Kuo, United States Magistrate Judge. In the plea agreement, Martin stipulated to the Guidelines estimate stated in the agreement, except for the applicability of the abuse of trust enhancement. Plea Agreement ¶ 2. The estimate in the plea agreement is the same as in the PSR. Id.

On June 10, 2022, the defendant reaffirmed his desire to plead guilty and the Honorable Carol Bagley Amon, United States District Judge, accepted Martin's guilty plea. See DE dated June 10, 2022.

II. <u>Martin's Guideline Range</u>

The Guidelines estimate in the plea agreement and in the PSR for Count One is as follows:

| U.S.S.G. Description | U.S.S.G. Section | Points |
|---|---|---|
| Base Offense Level | 2B1.1 | 6 |
| Loss Amount More Than $150,000 | 2B1.1(b)(1)(F) | +10 |
| Abuse of Position of Trust | 3B1.3 | +2 |
| Acceptance of Responsibility | 3E1.1(a) and (b) | -3 |
| Total Offense Level |  | 15 |

<u>Id.</u> ¶¶ 31-34, 38-40.

The defendant's total offense level is 15. <u>Id.</u> ¶ 40. Given that the defendant falls within Criminal History Category I, the range of imprisonment according to the Guidelines is 18 to 24 months.

As set out above, the government and Probation agree that the Guidelines' Abuse of Trust enhancement under Guidelines Section 3B1.3 applies. However, relying largely on out-of-circuit precedent, Martin contends that the Abuse of Trust enhancement does not apply. He is wrong.

Section 3B1.3 of the Guidelines provides that "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense, [the offense level shall] increase by two levels." <u>Id.</u> In the context of Medicare fraud scheme like this one, the Second Circuit has upheld the application of the abuse of position of trust enhancement for doctors like the defendant. See, e.g., <u>United States v. Wright</u>, 160 F.3d 905, 910 (2d Cir. 1998) (defendant occupied positions of trust relative to both government and residents of home for mentally retarded adults); <u>United States v. Ntshona</u>, 156 F.3d 318, 321 (2d Cir. 1998) ("We adopt the view of the other circuits presented with this issue and hold that a doctor convicted of using her position to commit Medicare fraud is involved in a fiduciary relationship with her patients and the government and hence is subject to an enhancement under § 3B1.3"). Here, the adjustment for abuse of a position of trust applies to the defendant because he was a medical doctor who used his medical license and Medicare billing privileges and those of his employees in the commission of the offense involving the treatment of vulnerable beneficiaries.

3

The defendant relies on United States v. Garrison, 133 F.3d 831 (11th Cir. 1998) for the contention that the abuse of trust enhancement should not apply to doctors in the absence of a fiduciary relationship with the victim-insurer. Defendant's Sentencing Memorandum at 5. In Garrison, the Eleventh Circuit overturned the applicability of the abuse of trust enhancement because it found that the defendant "did not occupy a sufficiently proximate position of trust relative to Medicare" id. at 841; and that any enhancement for abuse of trust would be based on the same conduct as the underlying fraud. Id. at 843. On both grounds, the Eleventh Circuit relied on the Second Circuit's decision in United States v. Broderson, 67 F.3d 452 (2d Cir. 1995).

Broderson involved the applicability of the abuse of trust enhancement to a businessman who negotiated a contract with NASA and fraudulently misrepresented that the cost and pricing data was accurate, complete and current. Id. at 455. The Second Circuit found that the enhancement did not apply because the defendant "did not occupy a position of trust vis-à-vis the government" id. and any abuse of trust was already "included in the base offense level" for fraud and deceit. Id. at 456.

Nevertheless, in 2004, the Eleventh Circuit retreated from Garrison when it decided United States v. Bracciale, 374 F.3d 998 (11th Cir. 2004). As the Bracciale court stated:

> We recognize that dicta in the Medicare fraud case of United States v. Garrison, 133 F.3d 831, 842-43 (11th Cir. 1998), may suggest a contrary result. However, as explained below, that dicta in Garrison was based on the Second Circuit's decision in [Broderson], from which the Second Circuit has now retreated. Further, this Court's subsequent decision in another Medicare fraud case, United States v. Liss, 265 F.3d 1220 (11th Cir. 2001), affirmed the abuse-of-trust enhancement and did not mention that Garrison dicta. Id. at 1229-30.

Accordingly, the defendant's reliance on Garrison is misplaced. Applying the controlling law of this Circuit set forth in Wright and Ntshona, the Section 3B1.3 enhancement applies to the defendant, a doctor who abused his position to perpetrate a Medicare fraud scheme by fraudulently billing for services purportedly rendered to vulnerable home-bound patients. As a result, the Court should apply the Guidelines range set out in the plea agreement and the PSR.

III.   A Sentence Within 18 to 24 Months Is Appropriate

   A.   Legal Standard

In United States v. Booker, the Supreme Court held that the Guidelines are advisory and not mandatory, and the Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentences, but also may tailor the sentence in light of other statutory concerns. 125 S. Ct. 738, 743 (2005); see 18 U.S.C. § 3553(a). Subsequent to Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005). Although the Supreme Court declined to

4

determine what weight a sentencing judge should normally give to the Guidelines in fashioning a reasonable sentence, it cautioned that judges should not "return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum." Id. at 113.

Later, in Gall v. United States, the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

  B. Application of 18 U.S.C. § 3553(a) Factors

The government respectfully submits that the Court should impose a sentence within the advisory Guidelines range of 18 to 24 months, because such a sentence is appropriate to account for the "nature and circumstances of the offense" and to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(1)-(2)(A). A sentence within that range will also promote general deterrence. See id. at § 3553(a)(2)(B).

Health care fraud is a serious offense that targets a national program relied on by millions of Americans. Congress aptly summarized the effects of the defendant's crime over thirty years ago:

> In whatever form it is found . . . fraud in these health care financing programs adversely affects all Americans. It cheats taxpayers who must ultimately bear the financial burden of misuse of funds in any government-sponsored program. It diverts from those most in need, the nation's elderly and poor, scarce program dollars that were intended to provide vitally needed quality health services.

H.R. 95-393, pt. II, at 44 (1977). See also H.R. Rep. 104-747 (1996) ("Everyone pays the price for health care fraud: beneficiaries of Government health care insurance such as Medicare and Medicaid pay more for medical services and equipment; consumers of private health insurance pay higher premiums; and taxpayers pay more to cover health care expenditures.").

A Guidelines sentence as estimated in the plea agreement is necessary to reflect the seriousness of the offense, promote respect for the law and provide general deterrence. Martin's scheme caused Medicare to lose funds and resources that could have gone to others. Additionally, Martin exhibited a cavalier disregard for the health of his patients by submitting claims for services they needed. A guidelines sentence is therefore appropriate.

5

Given that fraud schemes like Martin's are typically difficult to detect and prosecute, there is a greater need for general deterrence. See, e.g., Harmelin v. Michigan, 501 U.S. 957, 988 (1991) (noting that "since deterrent effect depends not only upon the amount of the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties"). Moreover, because "economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." See, e.g., United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White–Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005)) (internal quotation marks omitted)); United States v. Heffernan, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); Drago Francesco, Roberto Galbiati & Pietro Vertova, The Deterrent Effects of Prison: Evidence From a Natural Experiment, 117 J. of Political Econ. 257, 278 (2009) ("Our findings provide credible evidence that a one-month increase in expected punishment lowers the probability of committing a crime. This corroborates the theory of general deterrence.").

Congress recognized the need to afford adequate deterrence as "particularly important in the area of white collar crime" when it adopted Section 3553. See S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259. Congress rightly was disturbed that "white collar criminals often are sentenced to small fines and little or no imprisonment," and noted that, "[u]nfortunately, this creates the impression that certain offenses . . . can be written off as a cost of doing business." Id.

Furthermore, in adopting the Section 3553 sentencing factors, Congress emphasized the essential deterrent value of imprisoning white collar criminals, even when those criminals themselves might be unlikely to reoffend:

> The Committee is of the view that in the past there have been many cases, particularly in the instances of major white collar crime, in which probation has been granted because the offender required little or nothing in the way of institutionalized rehabilitative measures . . . and because society required no insulation from the offender, without due consideration being given to the fact that the heightened deterrent effect of incarceration and the readily perceivable receipt of just punishment accorded by incarceration were of critical importance. The placing on probation of [a white collar criminal] . . . may be grossly inappropriate . . . in cases in which the circumstances mandate the sentence's carrying substantial deterrent or punitive impact.

Id. at 91-92.

Martin's punishment should take into account the need to deter other doctors and doctor-owners of medical practices from stealing from health care programs including Medicare and Medicaid. Health care fraud is a serious problem that has warranted national law enforcement attention. Although federal law provides significant periods of incarceration for those who steal from these programs, this fraud continues at alarmingly high rates. In determining a just sentence, the Court should consider the need to promote respect for the criminal fraud laws. Here, a Guidelines sentence as estimated in the plea agreement will serve to deter doctors who, like Martin, may be tempted to place their financial interests above all else.

IV.     Conclusion

For the reasons set forth above, the government respectfully requests that the Court impose a sentence of imprisonment between 18 and 24 months, forfeiture in the amount of $249,000, and restitution to Medicare in the amount of $249,000.

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York

By:     /s/ William P. Campos
William P. Campos
John Vagelatos
Assistant U.S. Attorneys
(718) 254-6104


cc:     Mark Harris, Esq.
        Counsel for Defendant Denny Martin
        (by Email)